OKLAHOMA CITY HUMANE SO-
CIETY et al. v. FORD.

No. 34523.     April 8, 1952.

Rehearing Denied Aug. 5, 1952.

247 P. 2d 530.

Dudley, Duvall & Dudley, Oklahoma City, for plaintiffs in error.

Leslie L. Conner and Robert O. Bailey (Charles W. Conner, Arnold B. Britton, and A. L. Hilpirt, Oklahoma City, on the brief), for defendant in error.

HALLEY, V. C. J.   The Oklahoma City Humane Society, which was without funds, desired to build an animal shelter in Oklahoma City. J. H. Smith, a public-spirited citizen of Oklahoma City, was interested in the project. The city of Oklahoma City owned certain park property which it agreed to lease to the Humane Society on which to erect the shelter, and J. H. Smith agreed to furnish the necessary funds. T. E. Ford, a building contractor, agreed to furnish plans, supply the labor and materials, and erect the structure on a cost-plus basis, and was to receive for his services fifteen per cent of the total cost of building, but was to receive nothing in excess of $28,000 if the total cost exceeded that amount.

The positions of the parties were reversed on appeal, so they will be referred to by name or as they appeared in the court below.

J. H. Smith advanced $10,000 and, later, a second $10,000 as the work progressed. He furnished an additional $3,000 but became dissatisfied with the construction work and reports of expenditures by T. E. Ford, who then locked the building and refused to allow defendants to enter. He filed a mechanic's lien on the building on November 1, 1948, for the sum of $7,114.63, which was increased by amendment to $7,334.72, and filed suit to foreclose his lien on November 20, 1948.

The parties agreed to have an audit made at a cost of $200, and T. E. Ford incurred an additional year's premium on the fire insurance policy he was required to carry on the building, and claimed certain other small items of expense which were incurred in an effort to satisfy the defendants that he had constructed the shelter in accordance with plans and specifications and had paid all of the costs thereof.

On December 15, 1948, the Humane Society applied for the appointment of a receiver. An amended supplemental application was filed by the Society and Smith on April 15, 1949, for the appointment of a receiver in order to get possession of the building. This application was heard on April 25, 1949, and the court entered an order finding that the application should be sustained unless plaintiff would elect to give defendant's possession of the prem-

ises and accept a surety bond in the amount of $10,000 tendered by defendants, conditioned to pay any judgment rendered in the case against either or both defendants, separately or jointly. The plaintiff elected to accept a surety bond and release possession of the building to defendants. The order read, in part:

" * * * The plaintiff is directed to give to the defendants possession of said property, and the court orders that upon the filing and approval of Ten Thousand ($10,000) Dollar surety bond with the Clerk of the District Court by the defendants, in which the defendants herein will be the principal obligor and a surety company will be surety, conditioned that the plaintiff deliver possession of said building and premises to the defendants and that the defendants agree by the filing of said bond and agreement that they will pay any judgment rendered against either or both of them jointly or separately, including interest, costs, and a reasonable attorney fee, which is rendered in favor of the plaintiff * * *."

As to the attorneys' fee, it was stipulated by the parties that the court might fix such fee, and upon fixing of the fee at $1,500 no objection was made by defendants.

No mention was made in these proceedings about releasing the lien against the building.

Defendants requested that they be permitted to deposit a cashier's check for $10,000 with the bond in order to save the expense of having a surety company sign it. This suggestion was agreed to and a cashier's check for $10,000 attached to the bond.

Sec. 147, Title 42, O. S. 1951, provides that the sum of cash to be deposited to release a lien must be in the amount of the lien claim. The surety bond to be given was to insure any sum recovered for interest, costs, and attorneys' fees. The bond obviously was required because these sums cannot be accurately fixed prior to trial. It is further provided in said statute:

" * * * but in the event the lien claimant does not recover judgment finally for the full amount of the cash deposited, no liability shall exist upon said bond and no judgment shall be rendered thereon for any amount * * *."

On July 18, 1949, T. E. Ford recovered a judgment in the district court of Oklahoma county against Oklahoma City Humane Society, a corporation, and J. H. Smith in the sum of $6,828.21, plus interest, costs, and $1,500 attorneys' fees, providing that such judgment be paid out of the $10,000 bond and funds attached thereto "in lieu of foreclosure of his lien", being a lien for labor and materials used in the erection of the animal shelter by plaintiff for defendants.

Defendants filed a motion for new trial in which they contended that the judgment was excessive in that it awarded plaintiff certain sums including interest, costs, and attorneys' fees. Nowhere in their pleadings did defendants claim that they had complied with sec. 147, supra, by giving the three-day notice required therein; but they did say that plaintiff had ample notice. They rely upon Consolidated Cut Stone Co. v. Seidenbach, 181 Okla. 578, 75 P. 2d 442. In that case an attorney's fee was denied only after a showing of notice, a deposit of cash in the amount of the lien claim, and the filing of a surety bond. The judgment was for less than the lien claim, and an attorney's fee was properly denied.

The amount for which judgment was rendered in the case before us was less than the amount claimed in the lien statement. The only issue is whether or not defendants had complied with sec. 147, supra, by giving the notice required, making a cash deposit of the amount of the lien claim, and filing a bond to insure the payment of any judgment that might be rendered against them for interest, attorneys' fees, and costs. Defendants claim that they at least complied substantially with the intent and purpose of those

provisions and that they should not be required to pay interest, costs, or attorneys' fees, since plaintiff did not recover the full amount of the lien claim.

A careful review of the record convinces us that the provisions of the above statute were not complied with by defendants. The cashier's check was not deposited to cover the amount of the lien claim, but was deposited in lieu of a surety on the bond made by defendants for the purpose of securing possession of the building.

We find the following paragraphs in the journal entry:

" * * * The court further finds that in due time and with proper notice, plaintiff filed his lien as alleged in his petition, all according to law, and plaintiff thereby acquired and has lien upon the building and improvements constructed by him separate and apart from the land upon which said building and improvements are located under lease from Oklahoma City, as described in plaintiff's petition. * * *

"The court further finds that, under order of this court made and entered the 25th day of April, 1949, plaintiff was required to surrender possession of the building under construction by plaintiff, upon filing of a bond in the sum of $10,000.00 * * *, conditioned for the payment of any judgment rendered herein, including interest, costs, and attorneys' fees, and that thereafter it was stipulated that in order to save defendants the cost of a surety bond, defendants might deposit the sum of $10,000.00 with said bond in lieu of the execution thereof by a surety company as surety, and that such bond and deposit was so made, and plaintiff is entitled to have the judgment herein, together with interest, costs, and attorneys' fees as aforesaid, paid out of said bond, and the sums attached thereto in lieu of foreclosure of his lien aforesaid, to the extent that said bond and funds are sufficient to pay the same."

The judgment further provides, in regard to the payment thereof, that " * * * upon payment thereof, said lien shall be satisfied and discharged."

The findings and judgment of the court are clearly against the contention of defendants that the lien of plaintiff had been released. The bond and cashier's check were ordered made and filed on April 25, 1949, and the judgment was not entered until July 21, 1949. The above findings by the court in entering judgment show that the plaintiff's lien had not been released when the judgment was entered, and the judgment expressly provides that upon payment of the judgment the lien would be "released and discharged." Nowhere in the pleadings do defendants allege that the lien had been released, and they stipulated in open court that the amount of the attorneys' fees should be fixed by the court without testimony upon that issue. It was in defendants' motion for new trial that it was first intimated that they claimed that they had complied with the above statute and secured a release of plaintiff's lien by filing a bond for the purpose of securing possession of the premises. It cannot be disputed that the cashier's check for $10,000 was deposited for the purpose of avoiding the expense of having a surety company sign the bond, and not for the purpose of securing a release of the lien. To secure a release under sec. 147, supra, it would have been necessary for defendants to have deposited only the exact amount of the lien claim, which was slightly over $7,000, whereas the bond required by the court in lieu of a receivership was for $10,000.

The judgment is affirmed.

WELCH, CORN, DAVISON, and O'-NEAL, JJ., concur. GIBSON, JOHNSON, and BINGAMAN, JJ., dissent.